[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14813
Non-Argument Calendar

_____

BIA No. A97-129-627

MICHAEL V. GORODETSKIY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 18, 2008)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Michael Gorodetskiy, a native and citizen of Russia, petitions this Court for

review of the denial of his application for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). The immigration judge found that Gorodetskiy was not credible and failed to establish that he either suffered "past prosecution" or faced the probability of future persecution in Russia, and the Board of Immigration Appeals affirmed. We deny the petition.

## I. BACKGROUND

Gorodetskiy attempted to enter the United States by using a false passport and was denied entry. In a statement provided at the Miami International Airport, Gorodetskiy stated that he left Russia under threat that he would be harmed if he did not alter the statement he gave authorities involving a car accident that he witnessed. Gorodetskiy said that he was divorced and did not have any children.

Gorodetskiy later told immigration officials that he was divorced and had one son, Vitaly, who was living in Russia. Gorodetskiy explained that he sought asylum because of his membership in a particular social group comprised of individuals who were "material witness[es] to a crime." He provided immigration officials with the same version of events to explain his decision to leave Russia.

Later the same year, Gorodetskiy filed an application for asylum, withholding of removal, and relief under the Convention. Gorodetskiy sought

2

relief based on his membership in a particular social group who refused to comply with government corruption. Gorodetskiy stated on his application that he was married and had two sons.

At his removal hearing, Gorodetskiy testified about the incidents that led him to leave Russia. Gorodetskiy testified that, as he drove home one evening, a Mercedes passed him on a two-lane road. The Mercedes caused a vehicle in the oncoming lane to slide on the icy road and turn over. Gorodetskiy stopped to see if he could render assistance and thought that all three occupants of the vehicle were dead. Gorodetskiy observed the Mercedes stop, well-dressed occupants climb out of the car, observe the scene, write down Gorodetskiy's license plate number, then leave. Gorodetskiy called the militia and gave a statement about the accident.

Two weeks later, Gorodetskiy received a call from an individual who identified himself as an "investigator." The next day, two men came to Gorodetskiy's house and questioned him about the accident. The men told Gorodetskiy that the Moscow Chief Prosecutor caused the accident and would make life very hard if Gorodetskiy did not change his statement. The next day, Gorodetskiy drove to the militia office and submitted a new statement that blamed the damaged vehicle for the accident.

One of the occupants of the vehicle survived and told the police that an expensive vehicle with unusually bright blue headlights caused the accident. The

3

two men returned to Gorodetskiy's house, brandished weapons, and threatened harm to Gorodetskiy and his family if he failed to testify consistent with his second statement. Gorodetskiy relocated his wife and older son, who were Russian nationals, in St. Petersburg, and sent his younger son, a Ukrainian national, to live with his parents in Ukraine.

Gorodetskiy testified that he provided false statements about his family to immigration authorities because he feared that the interpreters might disclose the location of his family to Russian authorities. Gorodetskiy explained that he later disclosed the location of his younger son because he thought the child was safe in Ukraine. He stated that his wife had been asked about Gorodetskiy and threatened, but not harmed. Gorodetskiy stated that he would be killed if he returned to Russia.

The immigration judge found that Gorodetskiy was not credible based on the inconsistencies about his family in his statements to authorities and his application for asylum. The judge found that Gorodetskiy "proffer[ed] an explanation" for his inconsistencies "that . . . appear[ed] reasonable," but was inconsistent with his decision to disclose the name and location of his younger son. The judge found that the single incident reported by Gorodetskiy was not sufficiently severe or pervasive to constitute persecution; Gorodetskiy was not a member of an identifiable social group; Gorodetskiy did not have a well-founded basis to fear

4

countrywide prosecution; and Gorodetskiy had not established that he "suffered past persecution or [had] a well-founded fear of future persecution." The judge rulrd that Gorodetskiy was not eligible for asylum or withholding of removal. The Board of Immigration Appeals affirmed without opinion.

## II. STANDARD OF REVIEW

When the Board of Immigration Appeal affirms the decision of the immigration judge without an opinion, the decision of the immigration judge is the final removal order subject to review. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005). We review the decision to determine whether it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001)). To reverse those factual findings, we must find that the record "compels" reversal. Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1 (1992)).

## III. DISCUSSION

Gorodetskiy challenges the decision of the immigration judge to deny his applications for asylum and withholding of removal. Gorodetskiy objects to the finding that he was not a member of a particular social group. Gorodetskiy also argues that substantial evidence does not support the findings that he was not credible and failed to establish either past persecution or a well-founded fear of

5

future persecution.

Substantial evidence supports the finding that Gorodetskiy is not a member of a particular social group. To be a member of a "particular social group," an alien must establish that he is part of a "group of persons who share a common characteristic" that is "innate, unchangeable, or . . . fundamental to identity . . . other than [the] risk of being persecuted" or he is part of an association "that is perceived as a group by society." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1195 (11th Cir. 2006) (quoting United Nations High Commissioner for Refugees, Guidelines on International Protection: "Membership of a particular social group" within the Context of Article 1A(2) of the 1951 Convention and/or its 1967 Protocol relating to the Status of Refugees, ¶ 11, U.N. Doc. HCR/GIP/02/02 (May 7, 2002)). Gorodetskiy described his social group as individuals who faced persecution because of their refusal to conceal firsthand knowledge about a crime committed by a public official of Moscow. None of these characteristics are immutable, and Gorodetskiy's proposed group would not be readily recognized by society.

Substantial evidence also supports the finding that Gorodetskiy was not credible. See Al Najjar, 257 F.3d at 1283–84. The immigration judge provided specific and cogent reasons to support the adverse credibility determination. Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). Gorodetskiy attempted

6

to enter the country with a falsified document and provided inconsistent information to immigration officials about his marital status and children. Gorodetskiy also failed to establish that he suffered past persecution or faces future prosecution. According to Gorodetskiy, he was threatened twice to exculpate the Moscow Chief Prosecutor, but threats and harassment do not constitute persecution. See Sepulveda, 401 F.3d at 1231 ("[M]ere harassment does not amount to persecution." Persecution requires "more than a few isolated incidents of verbal harassment or intimidation." Id. (internal quotation marks omitted)). Gorodetskiy alleged that his intimidators once displayed weapons, but he was never physically harmed. Gorodetskiy also failed to establish that he faces harm on a countrywide basis because he was threatened by local Moscow officials and no harm has come to his wife and son, who have relocated to St. Petersburg.

Gorodetskiy's petition for review is **DENIED**.